## BARRANCO v. LAW et al.

(Supreme Court, Appellate Division, First Department. November 13, 1903.)

1. CREDITORS' ACTION—CHECKS—SIGNATURE—EVIDENCE—SUFFICIENCY.

In a creditor's action to obtain the application of a·certain sum held by a bank to the payment of plaintiff's judgment, in which it was in issue whether the manager in liquidation of the firm of which the debtor was the sole surviving partner had added his name as payee to certain checks signed by the surviving partner before or after they were signed, evidence considered, and *held* insufficient to support a finding that the manager's name was added after the signature.

Appeal from Special Term, New York County.

Action by Marguerite Barranco, as general guardian of Caesar Augustus Barranco and others, infants, against Alfred W. Law and others. From a judgment for plaintiff, defendant Law appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Delancey Nicoll, for appellant.
Robert W. B. Elliott, for respondent.

INGRAHAM, J. This is a creditors' action to obtain the application of the sum of $4,200, held by the Phenix National Bank, to the payment of the plaintiff's judgment against the 'defendant Ana M. Barranco, as the surviving partner of the firm of M. Barranco & Co. Upon the trial it appeared that in January, 1900, the defendant Ana M. Barranco had become the survivor of the firm on the death of her partner, and it was ascertained that the firm was in financial difficulty, and that liquidation of its business was necessary. After consultation with the creditors, it was agreed that the defendant Law should be employed as manager of the affairs of the firm during its liquidation, and on the 21st day of March, 1900, an agreement was executed between Ana M. Barranco, as surviving partner, the creditors of the firm, and the defendant Law, whereby the surviving partner appointed Law as general manager of the affairs of the firm in liquidation, and the subscribing creditors appointed said Law as their agent to act and decide for them, and each of them, in every matter which should arise in such liquidation. It was also provided in such agreement that all creditors of the firm to whom there was due less than $150 be forthwith paid in full, and that the moneys then on deposit in trust in liquidation in the Importers' & Traders' Bank and the Phenix·National Bank (reserving an amount to be approved by the survivor and said Law for expenses and contingencies over and above the amount required to make the above payments in full, and

the Key West and Tampa outlays mentioned in the agreement) be forthwith distributed pro rata among the creditors whose claims were approved by the survivor and Law, reserving pro rata amounts to meet any doubtful or disputed claims until said doubt or dispute should be removed; that, after making the aforesaid payments and dividends, all cash thereafter received, after allowing for expenses and for Key West and Tampa accounts, from time to time should be divided pro rata as thereinbefore particularly specified as to the first distribution. In pursuance of this agreement, Law took possession of the assets of the firm, and proceeded with the liquidation. He paid all of the debts under $150 in full, and paid 60 per cent. of the amount due to the remaining creditors whose claims were undisputed. After the 60 per cent. upon the conceded debts had been paid, there remained several claims against the estate which were disputed; and on the 28th day of December, 1900, Law wrote a letter to the surviving partner as follows:

"Dear Madam: Will you be good enough to sign the enclosed checks on the Phenix National Bank:

| | |
|---|---|
| No. 165, A. Rico ....: | $4,200 00 |
| No. 166, Mederos & Bro. | 1,204 57 |
| No. 167, Taussig & Wedeles | 1,229 96 |
| No. 168, B. B. Esterez | 106 52 |
| Total | $6,741 05 |

—Being 60 % of their claims, same as paid to all of the other creditors."

Then follows a request to sign certain other checks in full settlement of claims under $150, and the letter continues:

"Please sign check No. 174, $45, Ana M. Barranco, allowed her for December.

"Please sign check No. 175, A. W. Law, Trustee, $321.33, which amount is to be kept in a special trustee account and accounted for in the regular way.
      "Yours truly, '                                   A. W. Law."

These checks closed the account in the Phenix National Bank. This letter was delivered to the surviving partner on the afternoon of December 28, 1900, when she went to Law's office for the purpose of signing these checks. When she arrived there, the checks named in the letter were presented to her for signature, and she signed them, and delivered them so signed to Law. These checks were on the same afternoon presented to the Phenix National Bank, and by that bank certified, and returned to Law. They were all used, except check No. 165, which, although certified by the bank, has remained in Law's possession uncollected. These four checks were produced upon the trial, and are all in Law's handwriting, and are all substantially the same, except as to the name of the original payee and the amounts. Check No. 165 is as follows:

                                          "New York, Dec. 28, 1900.
"The Phenix National Bank, of the City of New York, pay to the order of A. Rico or A. W. Law, Trustee, Forty-two hundred dollars.
    "$4,200.                              M. Barranco & Co. in Liq.
    "[Countersigned] A. W. Law."

The surviving partner testified that when these checks were signed by her on December 28, 1900, they were drawn directly to the order

of the creditors, and that the words "or A. W. Law, Trustee," were not upon the face of the checks; the plaintiff claiming that the words were added afterwards.    There is no claim but that all of the money received by Law, including that drawn by the other checks signed at the same time, were properly used for the account of the copartnership; and this action is brought upon the theory that the amount retained by the bank to meet the check that it had certified is property of the copartnership, which should be applied to the payment of the plaintiff's judgment, rather than distributed among the creditors, as provided by the agreement.    It was conceded that the claim of Rico against the copartnership had been settled, and that no part of the firm's money was necessary to pay that indebtedness; and the one question of fact in dispute before the Special Term, and which was found in favor of the plaintiff, was whether or not the words "or A. W. Law, Trustee," were inserted in the check in question before or after it was signed; it seeming to have been conceded by both parties on the trial, as it was on this appeal, that if A. W. Law was a payee named in the check, he was entitled to the money under the liquidating agreement, and the action must fall.

The surviving partner testified that she came to Law's office at 2 o'clock on the 28th day of December, 1900; that these checks were presented to her; that she signed them; that she remembered that they were drawn to the order of the creditors, and not to the creditors "or A. W. Law, Trustee"; that when she signed them she returned them to Mr. Law.    That testimony was supported by the evidence of her brother, taken on commission, he being at the time a resident of the Island of Cuba.    For the defense Law testified that just before December 28, 1900, he made an agreement with the surviving partner by which she was to turn over all the assets of the firm to him for distribution among the creditors; that he made the arrangements to carry this plan into effect, and sent for the surviving partner for the purpose of signing the papers and drawing from the bank the remainder of the money there deposited; that he wrote the letter containing the request to sign these checks, and then drew up the checks in the name of the creditors; that after he drew the checks he realized that, as these claims were disputed, the amounts to be paid were subject to adjustment, and that he would have to get the money in order to make the adjustment; that he then consulted Mr. Parmly, an attorney at law, who had acted as his legal adviser, as to how the checks should be drawn, and was advised by Mr. Parmly that the proper method was to insert after the name of the creditor for whose benefit the money was drawn the words, "or A. W. Law, Trustee," which would enable Mr. Law to draw the money, applying so much of it as was necessary to the settlement of the indebtedness, and holding the balance of any money not used in the settlement of the claims for the benefit of the other creditors; that in pursuance of this advice he added to the name of the payee in these four checks his own name, "A. W. Law, Trustee," and that they were in that condition when they were presented to the surviving partner for signature and signed by her; and that at the same time there was signed an agreement by which all moneys, checks, and accounts were

turned over to Law. This testimony was corroborated by Mr. Parmly, the attorney under whose advice these checks were drawn, who testified that immediately upon the checks being signed they were given to him in the presence of the surviving partner, and he took them to the bank for certification. Two experts were called on behalf of the defendant, who had examined the checks, and they both testified that the certification of the check was written over the words "or A. W. Law, Trustee"; and the teller of the bank, who certified the checks, testified that when they were certified they were payable to Law, as they were when produced on the trial; that the certification was written over Law's name as payee of the checks. Mr. Law was selected by the creditors, as well as by the surviving partner, as the person who should have charge of the liquidation of the affairs of the copartnership. It is not pretended that he has any personal interest in getting this money out of the bank, or that he has failed in any particular to carry out the trust. So far as is disclosed, it could make no possible difference to him whether this money were paid to the plaintiff or distributed by him in accordance with the agreement under which he acted. That for the purpose of getting this money for the benefit of creditors he should have committed forgery, and then to sustain his forgery committed perjury, is very improbable; and there is no escape from the conclusion that, if the finding of the trial judge is correct, Law has been guilty of both of these crimes. He detailed with particularity the transaction as it happened—his drawing checks in the name of creditors, and entering the checks so drawn in the checkbook; his asking the advice of his attorney as to whether he should draw new checks, receiving advice that he should add "or A. W. Law, Trustee," and his acting upon that advice before the checks were signed; Mr. Parmly, who is without the slightest interest, testifying to the transaction, and corroborating Mr. Law. In opposition to this testimony, supported as it is by the strong probabilities, we have the unsupported recollection of the plaintiff, a young girl, who, by the death of those who had managed the business, had become the surviving partner of this firm, and her brother, one of the persons for whose benefit this action is brought. The brother's testimony having been taken by commission, he was not subjected to cross-examination. Certainly the evidence as it stands strongly predominates in favor of the defendant. The fact that, under the agreement under which Law was acting and the agreement executed when the checks were signed, it was contemplated that all the money and accounts of the firm were to be turned over to Law, to be used in carrying out the agreement, and the checks for the balance, being drawn to his order as trustee, to be accounted for by him in the regular way, were signed by the surviving partner, all tend to show that it was the intention to put into Law's hands the balance of the money in these two banks. It is clear that drawing checks to the order of creditors whose claims were disputed would not tend to the advantage of the estate. The story that he tells is probable. The entry in the stubbook and the form of the letter requesting the signing of the checks are explained, and the only evidence that contradicts this is the unsupported recollection of two young persons who were pres-

ent at the time the checks were signed, who had no interest in observing the particular form of the check, but who have a strong interest in the present litigation. Without imputing any intentional misstatement to either of these two witnesses, it is apparent that their recollection is at fault; that the checks were really drawn to the order of the creditors, or "A. W. Law, Trustee," and as such signed by the surviving partner. We have therefore come to the conclusion that the finding of the learned trial judge that these checks, when signed, were not payable to Law as trustee, cannot be sustained. As this was the only question of fact litigated upon the trial, and as the plaintiff's entire cause of action is based upon the fact that these checks were not payable to the order of Law when signed, it follows that there must be a new trial.

The judgment appealed from is therefore reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.